

ORIGINAL
FILED

08 APR 29 AM 11: 53

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____  DEPUTY

1   ROBBINS UMEDA & FINK, LLP
    BRIAN J. ROBBINS  (190264)
2   JEFFREY P. FINK  (199291)
    GEORGE C. AGUILAR (126535)
3   ASHLEY R. PALMER (246602)
    610 West Ash Street, Suite 1800
4   San Diego, CA 92101
    Telephone: (619) 525-3990
5   Facsimile:  (619) 525-3991

6   LANDSKRONER GRIECO MADDEN, LTD.
    JACK LANDSKRONER
7   1360 West 9th Street, Suite 200
    Cleveland, OH 44113
8   Telephone: (216) 522-9000
    Facsimile:  (216) 522-9007

9

    Attorneys for Plaintiff

10

11

12                   UNITED STATES DISTRICT COURT

13                 SOUTHERN DISTRICT OF CALIFORNIA

14                   **'08 CV 775  WQH BLM**

    UNIVERSAL HILLCREST, LLC, individually )   Case No.
15  and on behalf of all others similarly situated, )
                                            )   CLASS ACTION COMPLAINT
16                         Plaintiff,       )
                                            )
17         vs.                              )
                                            )
18  REDDY ICE HOLDINGS, INC., REDDY ICE     )
    CORPORATION, ARCTIC GLACIER             )
19  INCOME FUND, ARCTIC GLACIER INC.,       )
    ARCTIC GLACIER INTERNATIONAL INC.       )
20  and HOME CITY ICE COMPANY,              )
                                            )
21                         Defendants.      )   DEMAND FOR JURY TRIAL
    _____)

22

23

24

25

26

27

28

1      Plaintiff Universal Hillcrest, LLC ("Universal"), on behalf of itself and all others similarly

2  situated, brings this action under the federal antitrust laws, Sections 4 and 16 of the Clayton Act, 15

3  U.S.C. §§15 and 26, to obtain injunctive relief and  recover treble damages and the costs of suit,

4  including reasonable attorney and expert fees, for the injuries to Plaintiff and members of the

5  proposed Class it represents resulting from defendants' violations of the federal antitrust laws,

6  specifically Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1.  The allegations set forth below

7  are based upon information and belief pursuant to the investigation of counsel, except for

8  information based on personal knowledge.

9                   **NATURE OF CLAIM**

10      1.     This antitrust class action arises out of an international conspiracy among defendants

11  and their co-conspirators with the purpose and effect of fixing prices, allocating markets and

12  geographic territories and committing other anticompetitive practices designed to unlawfully restrain

13  trade in the market(s) for packaged cubed, crushed, block and dry ice ("Packaged Ice") in the United

14  States and Canada.  Packaged Ice is sold by defendants to supermarkets, mass merchants, convenience

15  stores, wholesale distributors and users of Packaged Ice.

16      2.     Pursuant to Rules 23(a), 23(b) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff

17  seeks treble damages, injunctive relief, attorneys' fees and costs under the antitrust laws of the United States

18  on behalf of themselves and all others similarly situated.

19               **JURISDICTION AND VENUE**

20      3.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§15

21  and 26, and pursuant to 28 U.S.C. §§1331, 1337(a).  This Court has supplemental jurisdiction over

22  the state law claims pursuant to 28 U.S.C. §1367(a), and diversity jurisdiction over Plaintiff's state

23  law claim under 28 U.S.C. §1332.

24      4.     This Court has personal jurisdiction over each of the defendants because each of the

25  defendants: (a) committed acts in furtherance of the conspiracy alleged herein in this District;

26  (b) transacted business in Packaged Ice and other products in this District; (c) maintain and have

27  maintained continuous and systemic contacts with this District over a period of years; or

28  (d) purposefully availed itself of the benefits of doing business in this District.  Accordingly, each

1    defendant maintains minimum contacts with this District more than sufficient to subject it to service

2    of process and sufficient to comply with due process of law.

3        5.       Venue is proper in this judicial district pursuant to 15 U.S.C. §22 and 28 U.S.C.

4    §1391(b) and (c) because some of the defendants reside, or are licensed to do business or are doing

5    business, or are found or transact business, in this District and/or the claims arose in this District.

6                                         **PARTIES**

7        6.       Plaintiff Universal owns and operates a restaurant and nightclub in San Diego,

8    California. Univeral purchased Packaged Ice directly from one or more of the defendants during the

9    Class Period, and was damaged as a result of defendants' unlawful conduct.

10       7.       Defendant Reddy Ice Holdings, Inc. ("Reddy Ice Holdings") is a Delaware corporation

11    with its principal place of business located in Dallas, Texas. Reddy Ice Holdings describes itself as

12    the largest manufacturer and distributor of packaged ice in the United States. It sells its products

13    primarily under the "Reddy Ice" brand to approximately 82,000 locations in 31 states and the District of

14    Columbia. Reddy Ice Holdings serves most significant consumer packaged goods channels of

15    distribution, as well as restaurants, special entertainment events, commercial users and the

16    agricultural sector.

17       8.       Indeed, Reddy Ice Holdings is the largest ice company in North America, recording

18    2007 sales of $339 million. It has the dominant market position in the U.S. sunbelt states, from

19    Florida to Arizona. Reddy Ice Holdings manufactures and distributes ice products, including cubed

20    ice, crushed ice, half-moon and cylindrical ice, block ice, and dry ice. Reddy Ice Holdings sells

21    approximately 1.9 million tons of ice per year, primarily packaged in seven and ten pound bags,

22    principally to convenience stores and supermarkets. During the Class Period, as defined below,

23    Reddy Ice Holdings began trading on the New York Stock Exchange. Prior to August 12, 2005, it had

24    been privately held under the name Packaged Ice, Inc. During the Class Period, Reddy Ice Holdings

25    directly and/or through the control of its subsidiaries and affiliates manufactured, marketed, sold

26    and/or distributed Packaged Ice in this District and/or in other districts throughout the United States.

27       9.       Defendant Reddy Ice Corporation is a Delaware Corporation with its principal of

28    business in Dallas, Texas. Reddy Ice Corporation is a wholly-owned subsidiary of defendant Reddy

1  Ice Holdings. During the Class Period, Reddy Ice Corporation directly and/or through the control of

2  its subsidiaries and affiliates manufactured, marketed, sold and/or distributed Packaged Ice in this

3  District and/or other districts throughout the United States.

4      10.    Collectively, Reddy Ice Holdings, Inc. and Reddy Ice Corporation are referred to as

5  "Reddy Ice." Each of the Reddy Ice defendants joined the conspiracy alleged herein and is legally

6  responsible for its conduct because its directors, members, officers, employees and/or agents, acting

7  within the scope of their authority, reached unlawful agreement(s) with their competitors to

8  unlawfully restrain competition. Alternatively, each of the Reddy Ice defendants is legally

9  responsible because it acted through, facilitated, dominated or controlled the actions of another

10  Reddy Ice defendant in furtherance of the conspiracy alleged herein.

11      11.    Defendant Arctic Glacier Income Fund is a Canadian holding company with its

12  principal place of business in Winnipeg, Manitoba, Canada. Arctic Glacier Income Fund describes

13  itself as a leading producer, marketer and distributor of high-quality packaged ice in North America

14  under the brand name of "Arctic Glacier Premium Ice." Arctic Glacier operates 37 manufacturing

15  plants and 50 distribution facilities across Canada and the northeast, central and western United States

16  servicing more than 70,000 retail accounts.

17      12.    Arctic Glacier Income Fund is the second-largest producer, marketer, and distributor of

18  packaged ice in North America, with total revenues of $249 million for 2007. Of these revenues,

19  more than 80 percent comes from its U.S. operations, in which it has dominant market positions in

20  major eastern seaboard cities such as New York and Philadelphia, New England, California, and the

21  Midwest. The company also controls most of the Packaged Ice sales in Canada. During the Class

22  Period, Arctic Glacier Income Fund directly and/or through the control of its subsidiaries and

23  affiliates manufactured, marketed, sold and/or distributed Packaged Ice in this District and/or in

24  other districts throughout the United States.

25      13.    Defendant Arctic Glacier, Inc. is a Canadian corporation with its principal place of

26  business in Winnipeg, Manitoba, Canada. Arctic Glacier, Inc. is a wholly-owned subsidiary of

27  defendant Arctic Glacier Income Fund. During the Class Period, Arctic Glacier, Inc. directly and/or

28  through the control of its subsidiaries and affiliates manufactured, marketed, sold and/or distributed

1    Packaged Ice in this District and/or other districts throughout the United States.

2        14.    Defendant Arctic Glacier International Inc. is a Delaware corporation with its

3    principal place of business in West St. Paul, Minnesota. Arctic Glacier International Inc. is a

4    wholly-owned subsidiary of defendant Arctic Glacier Income Fund. During the Class Period, Arctic

5    Glacier International Inc. directly and/or through the control of its subsidiaries and affiliates

6    manufactured, marketed, sold and/or distributed Packaged Ice in this District and/or other districts

7    throughout the United States.

8        15.    Collectively, Arctic Glacier Income Fund, Arctic Glacier, Inc. and Arctic Glacier

9    International Inc. are referred to as "Arctic Glacier." Each of the Arctic Glacier defendants joined

10   the conspiracy alleged herein and is legally responsible for its conduct because its directors,

11   members, officers, employees and/or agents, acting within the scope of their authority, reached

12   unlawful agreement(s) with their competitors to unlawfully restrain competition. Alternatively, each

13   of the Arctic Glacier defendants is legally responsible because it acted through, facilitated,

14   dominated or controlled the actions of another Arctic Glacier defendant in furtherance of the

15   conspiracy alleged herein.

16       16.    Defendant Home City Ice Company ("Home City Ice") is a privately-held Ohio

17   Corporation with its principal place of business in Cincinnati, Ohio. Home City Ice sells and/or

18   distributes Packaged Ice across all of Ohio, Indiana, Illinois, Kentucky, and West Virginia, as well as

19   parts of Michigan, Pennsylvania, Tennessee, New York, and Maryland. Home City Ice manufactures

20   4,400 tons of ice per day in 28 manufacturing plants, with 36 distribution centers to serve the

21   Midwest. During the Class Period, Home City Ice directly and/or through the control of its

22   subsidiaries and affiliates manufactured, marketed, sold and/or distributed Packaged Ice in this

23   District and/or other districts throughout the United States.

## CO-CONSPRATORS AND AGENTS

25       17.    Other natural persons, corporations, and entities not named as defendants herein, have

26   participated in the unlawful conspiratorial activity alleged herein in violation of the antitrust laws of

27   the United States.

28

- 4 -

18.     Whenever in this Complaint reference is made to an act, statement, or transaction of any corporation or entity, the allegation means that the corporation or entity acted, stated, or transacted by or through its directors, members, partners, officers, employees, or agents, while they were engaged in the management, direction, control, or conduct of the corporation's or entity's business and acting within the scope of their authority.

## CLASS ALLEGATIONS

19.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on its own behalf and on behalf of all others similarly situated.  The proposed class includes all persons, corporations, and other legal entities in the United States (excluding defendants, their subsidiaries, and any co-conspirators), who purchased Packaged Ice directly from one or more of the defendants (the "Class") in the United States or Canada at any time from at least January 1, 2002 through the present (the "Class Period").

20.     The members of the Class are so numerous and geographically dispersed across the country that joinder of all Class members would be impracticable.  Due to the nature of the claims asserted here, Plaintiff believes that members of the Class are located throughout the United States and Canada.  The exact number of Class members is unknown by Plaintiff at this time, but Plaintiff believes that the Class numbers in the thousands and their identities can only be discovered through inspection of defendants' and their co-conspirators' records, which are or should be readily available.

21.     Plaintiff's claims are typical of the members of the Class because Plaintiff and all members of the Class were damaged by the same wrongful conduct of the Defendants alleged herein. Plaintiff and the Class purchased Packaged Ice at artificially maintained, non-competitive prices established by the actions of defendants and their unnamed co-conspirators in connection with the wrongful conduct alleged herein.

22.     Plaintiff will fairly and adequately protect the interests of the Class.  The interests of Plaintiff are coincident with, and not antagonistic to, those of the Class.  In addition, Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex class action antitrust litigation.

- 5 -

23. Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members, if any, in that defendants have acted on grounds generally applicable to the entire Class. Among the questions of law and fact common to the Class are:

      a. Whether defendants conspired with the purpose and effect of fixing prices, allocating markets and committing other anticompetitive practice designed to unlawfully restrain the trade of Packaged Ice;

      b. Whether defendants' conduct violated Section 1 of the Sherman Act;

      c. The existence, duration, and illegality of the contract, combination or conspiracy alleged herein;

      d. The identity of the co-conspirators;

      e. The effect upon and the extent of injuries sustained by Plaintiff and members of the Class and the appropriate type and/or measure of damages;

      f. Whether defendants took affirmative steps to conceal the contract, combination or conspiracy alleged herein; and

      g. Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

24. Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for defendants. Class treatment will also permit the adjudication of relatively small claims by certain class members, who could not afford to individually litigate an antitrust claim against large corporate defendants.

25. This action presents no difficulties of management that would preclude its maintenance as a class action.

- 6 -

**INTERSTATE TRADE AND COMMERCE**

26.    The defendants are leading manufacturers of Packaged Ice in the United States and Canada. The Packaged Ice industry is over a billion dollar a year industry, operating throughout the United States and Canada. During the Class Period, defendants manufactured, marketed, distributed, and/or sold Packaged Ice to customers throughout the United States and Canada, utilizing the means and instrumentalities of interstate trade and commerce.

27.    Defendants' and their co-conspirators' unlawful activity had a direct, substantial, and reasonably foreseeable effect upon interstate trade and commerce. The unlawful restraints of trade alleged herein have directly and substantially affected interstate commerce in that the defendants have deprived Plaintiff and the Class of the benefits of free and open competition in the Packaged Ice market throughout the United States and Canada.

**ANTICOMPETITIVE CONDUCT**

28.    Defendants are the largest manufacturers of Packaged Ice in the United States and North America.

29.    Beginning at least as early as January 1, 2002, the exact date being unknown to Plaintiff, and continuing thereafter to present day, defendants and their coconspirators engaged in an unlawful contract, combination or conspiracy with the purpose and effect of fixing prices, allocating markets and committing other anticompetitive practices designed to unlawfully fix, raise, maintain, and/or stabilize prices of Packaged Ice in a *per se* violation or unreasonable restraint of trade in violation of Section 1 of the Sherman Act.

**THE PACKAGED ICE INDUSTRY**

30.    Packaged Ice is sold throughout the United States principally to convenience stores, supermarkets and other retail outlets, primarily in 7 and 10 pound bags, as well as in block form.

31.    Sales of Packaged Ice are approximately $1.8 billion annually. About half of those sales are produced by third-party manufacturers, with the other half produced in-house (ice machines). Sales by defendants comprise approximately 70% of third-party manufacturers' sales of Packaged Ice.

32.    Canada is a major exporter of ice into the United States.

33.    The Packaged Ice industry has high barriers to entry. Many Packaged Ice customers carry only one brand of ice and have long term relationships of many years with their suppliers. A new entrant into the Packaged Ice market would have to incur multimillion dollar costs, including manufacturing plants and equipment, energy, transportation, fuel costs, and distribution infrastructure. Because of these high costs, new or small distributors are not able to meet the peak needs of large multistate customers and cannot compete successfully for such customers. The industry has high start-up and replacement costs, and many customers carry only one brand of ice and have long term relationships of ten or more years with the manufacturer from whom they purchase Packaged Ice products.

34.    There are no economic substitutes for Packaged Ice.

35.    Packaged Ice is a commodity product, which in a competitive market would be sold primarily on the basis of price. Defendants' anticompetitive conduct has enabled them to fix, raise, maintain and stabilize the price of Packaged Ice in the geographic areas allocated to them at artificially high levels.

36.    The Packaged Ice Industry has undergone substantial consolidation within the last few years.

    a.    Defendant Reddy Ice has continuously purchased small ice companies in various locations. During 2006, Reddy Ice purchased ten ice companies, and during 2007, it purchased an additional twenty ice companies.

    b.    Arctic Glacier has purchased numerous smaller ice companies. In 2006, Arctic Glacier acquired Happy Ice LLC, the largest ice company in upstate New York. Also in 2006, it acquired six companies collectively known as California Ice, which enabled Arctic Glacier to become the largest Packaged Ice producer in California. In 2007, Arctic Glacier purchased an additional company called Union Ice in Southern California.

37.    Through acquisitions, defendants have increased their market power and reduced the ability of any other Packaged Ice companies to compete for customers serviced by defendants.

38.    During the Class Period, Defendants engaged in illegal, anticompetitive conduct by, *inter alia,* allocating markets so that Defendants were no longer in competition with each other.

- 8 -

39.    This resulted in the following market division: (a) Reddy Ice dominates the market in the U.S. sunbelt states, from Florida to Arizona, and the Northwest (AZ, NM, TX, OK, AR, LA, MI, AL, GA, FL, SC, NC, VA, CO, DE, DC, HI, ID, KA, KY, MD, MS, NV, NJ, OR, PA, TN, UT, WA, WV and WY); (b) Arctic Ice dominates the market in the Central and Northeastern states and California (CA, ND, SD, CA, NE, KS, MO, IA, MN, WI, MI, PA, DE, NJ, NY, CT, VT, NH and ME); and (c) Home City Ice dominates the market in the Midwest (IL, OH and IN).  There is virtually no overlap between the geographic markets in which each Defendant operates.

40.    Defendants agreed not to compete head to head in any of the markets that one of them dominates.  Each region of the U.S. market, as alleged herein, is controlled by one particular Packaged Ice manufacturer.  The market share of non-defendant companies that manufacture and distribute Packaged Ice is extremely limited.

41.    By engaging in conduct that allocated the market among the defendants, price competition was reduced or eliminated throughout the United States and Canada.

42.    The Packaged Ice industry is highly seasonal, characterized by peak demand during the warmer months of May through September.  Approximately 69 percent of annual revenues occur during this time.

43.    Demand for Packaged Ice within specific geographic areas is affected by weather conditions.  There is an extended peak selling season in the southern United States, where temperatures remain warm beyond September.  Revenues typically increase during particularly hot summers.  Cool and/or rainy seasons, however, negatively impact ice purchases.

44.    The Antitrust Division of the United States Department of Justice ("DOJ"), is investigating possible anticompetitive practices in the Packaged Ice business.

45.    The DOJ investigation follows a complaint to Canada's Competition Bureau ("Bureau") by Polar Ice, a smaller Packaged Ice manufacturer in western Canada, who alleged that Arctic Glacier engaged in strong-arm tactics in the Edmonton geographic area, including "muscling," bribing, and offering kickbacks to the smaller company's customers.

46.    The court in Canada found that Arctic Glacier had engaged in conduct violative of Canada's competition law to prevent the smaller ice company in from competing with Arctic Glacier

- 9 -

1  to deliver ice to a particular customer.  Among other things, the court found that Arctic Glacier had

2  used intimidation, bribery, and other unlawful means and methods to force the customer to stop

3  seeking competitive prices from the small ice company, with the intention of driving that small

4  competitor out of business.  The Canadian court awarded Polar Ice $50,000 in damages.

5       47.    Arctic Glacier defendants have acknowledged that it received a subpoena in

6  connection with the DOJ investigation on or about March 5, 2008.

7       48.    Just prior to this news, defendant Arctic Glacier Income Fund had reported a fourth-

8  quarter loss of $3.7 million on revenue of $36.3 million.  In the same quarter of the previous year, the

9  fund lost $6.2 million, or 19 cents a unit, on revenue of $39.9 million.  They reported that the stronger

10  Canadian dollar reduced reported sales by $4.5 million during the quarter.

11       49.    Also on or about March 6, 2008, Reddy Ice announced that federal officials executed

12  a search warrant at the Company's corporate office in Dallas on March 5, 2008.

13       50.    Reddy Ice announced that the DOJ took "various documents and information," but

14  would not say whether computers were taken.  A DOJ spokesperson stated that the agency was

15  "investigating the possibility of anti-competitive practices in the packaged-ice industry."

16       51.    Between December 1, 2007 and January 3, 2008, both the Chief Operating Officer

17  and Chief Executive Officer of Reddy Ice resigned, just prior to the time the DOJ executed its search

18  warrants.

19       52.    Defendants are members of several trade associations relating to the Packaged Ice

20  industry, and their executives have served on the boards of directors and various standing

21  committees of these organizations.  These trade associations hold regular meetings of their boards,

22  committees, and members, which defendants' representatives have attended, and which provide the

23  opportunity for defendants to meet and communicate with each other concerning the markets,

24  customers and prices of Packaged Ice.

25       53.    For example, defendants are members of the International Packaged Ice Association

26  ("IPIA"), which is headquartered in Tampa, Florida.  Ben Key, Reddy Ice's Executive Vice President

27  – Sales and marketing, recently served as the Chairman of the IPIA Executive Committee.  Nancy

28  Thorn, Director of marketing at Reddy Ice, and Keith McMahon, President and Chief Executive

1   Officer at Arctic Inc., are members of the IPIA Board of Directors.  In addition, Ms. Thorn,

2   Mr. McMahon, and Tommy Sedler, Operations Manager and Treasurer of Home City, are members

3   of the IPIA Marketing Committee.

4        54.    IPIA holds meetings of its Board of Directors and Committees, as well as an annual

5   meeting of its members.  Representatives of defendants attended such meetings.  IPIA's 2006 annual

6   meeting was held on November 23-December 3, 2006, in Tucson, Arizona, and its 2004 annual

7   meeting was held on November 12-17, 2004, in La Quinta, California.

8        55.    There are regional trade associations that are affiliated with IPIA, and of which

9   defendants are members.  Defendants' representatives have been members of the board of directors

10  or various committees of these regional trade associations.  In addition, like the IPIA, these regional

11  trade associations hold regular meetings of their boards, committees and members, which have been

12  attended by defendants' representatives, and which have afforded defendants opportunities to meet

13  and communicate concerning the market, customers and prices of Packaged Ice.

14       56.    For example, Arctic Glacier and Home City are members and their representatives are

15  officers of the Northeastern Ice Association ("NIA").  Keith McMahon of Arctic Glacier, and

16  Tommy Sedler and Ted Sedler of Home City are members of NIA.  Ted Sedler also currently serves

17  as First vice President and Treasurer of NIA.  NIA typically holds meetings of its officers and Board

18  of Directors in the spring and holds its member conventions in the fall.  Its Board of Directors

19  meetings have been held in the following locales: Washington, DC (2001); Williamsburg, VA

20  (2002); Bahamas (2003); New York, NY (2004); Ledyard, CT (2006); and Lake George, NY (2007).

21  Its annual conventions have been held in the following locales: Providence, RI (2001); Ledyard, CT

22  (2002); New Orleans, LA (2003); Atlantic City, NJ (2004); Montreal, Canada (2005); Boston, MA

23  (2006); and Lake George, NY (2007).  Representatives of Arctic Glacier and Home City have

24  attended these meetings and conventions.

25       57.    In addition, Arctic Glacier and Reddy Ice are members of the Western Ice

26  Association ("WIA"), which is also affiliated with the IPIA.  The WIA's members include William

27  Brick, formerly Chairman and CEO of Reddy Ice and currently its Executive Chairman, and Jim

28  Weaver, currently President, CEO and a member of the Board of Directors of Reddy Ice, as well as

1  several representatives of Arctic Glacier.  WIA also holds periodic meetings of its Board of

2  Directors and committees, as well as annual meetings of its members.  Representatives of Arctic

3  Glacier and Reddy Ice have attended these meetings.

4  ### ALLEGATIONS OF ANTITRUST INJURY

5      58.    The unlawful contact, combination or conspiracy alleged above had and has the

6  following effects, among others:

7          a.    Prices charged by defendants and their co-conspirators to plaintiff and Class

8  members for Packaged Ice were maintained at artificially high and noncompetitive levels;

9          b.    Plaintiff and Class members were required to pay more for Packaged Ice

10  than they would have paid in a competitive marketplace unfettered by defendants' and their c-

11  conspirators' collusive and unlawful conduct; and

12          c.    Plaintiff and Class members have been deprived of the benefits of free, open

13  and unrestricted competition in the market for Packaged Ice.

14      59.    During the Class Period covered, defendants charged Plaintiff and the Class

15  anticompetitive prices for Packaged Ice.  By reason of the alleged violations of the antitrust laws,

16  Plaintiff and the Class have sustained injury to their business or property, having paid higher prices for

17  Packaged Ice than they would have paid absent the illegal contract, combination or conspiracy, and,

18  as a result, have been injured in their business and have suffered damages in an amount presently

19  undetermined.  This is an antitrust injury of the type that the antitrust laws were meant to punish and

20  prevent.

21      60.    The specific amounts of damages have not yet been determined because such

22  determination will require discovery.  When these amounts have been determined, Plaintiff will seek

23  leave of Court to amend this Complaint to include such amounts.

24  ### EQUITABLE TOLLING FOR FRAUDULENT CONCEALMENT

25      61.    Throughout the conspiracy alleged herein, defendants affirmatively and actively

26  concealed their unlawful activity from Plaintiff and the Class.  While Plaintiff has diligently sought

27  to protect itself from unlawful activity, Plaintiff was unable to detect this conspiracy, which by its

28

- 12 -

1  nature is self-concealing. Furthermore, defendants acted fraudulently and deceptively to conceal the

2  unlawful collusion by conduct including:

3          a.        Falsely representing to Plaintiff and/or other purchasers that prices and

4  markets for Packaged Ice were fair and competitive, or that price increases were caused by costs of

5  raw materials or other market forces or other false and pretextual justifications, when in fact the

6  pricing was set through the conspiracy alleged herein;

7          b.        Conducting discussions through covert telephone calls and meetings;

8          c.        Confining participation in the unlawful activity to a limited number of

9  persons so as to reduce the risk of detection;

10          d.        Avoiding either references in documents, or the creation of documents, that

11  would implicate defendants for their participation in unlawful collusion;

12          e.        Using coded words in documents and conversations to conceal the collusion

13  in the sale and distribution of Packaged Ice; and/or

14          f.        Destroying or hiding documents that would constitute evidence of

15  participation in the conspiracy alleged herein;

16      62.    Plaintiff has exercised due diligence in seeking to protect itself from the types of

17  unlawful acts that in fact occurred. Despite this diligence, Plaintiff did not learn of the conspiracy,

18  and could not have learned of the conspiracy, until the existence of ongoing criminal investigations

19  was publicly disclosed in early 2008.

20  <center>**COUNT I**</center>

21  <center>**<u>VIOLATION OF SECTION 1 OF THE SHERMAN ANTITRUST ACT</u>**</center>

22      63.    Plaintiff incorporates by reference the allegations above as though fully set forth

23  herein.

24      64.    Beginning at least as early as January 1, 2002 and continuing to the present, the exact

25  dates being unknown to Plaintiff, defendants and un-named conspirators entered into and engaged in

26  a contract, combination, or conspiracy in an unreasonable restraint of trade in violation of the

27  Section 1 of the Sherman Act.

28

<center>- 13 -</center>

65. The formulating and furthering their conspiracy, defendants and their co-conspirators engaged in unlawful anti-competitive activities, including:

a. Participating in meetings and conversations to discuss the prices of Packaged Ice, levels of output of Packaged Ice, and customers and markets for Packaged Ice;

b. Agreeing during those meetings and conversations to fix the prices of Packaged Ice sold to Plaintiff and other purchasers;

c. Agreeing during those meetings and conversations not to compete in the sale of Packaged Ice to Plaintiff and other purchasers and/or to allocate market share and sales volume;

d. Issuing price announcements and price quotations and charging prices consistent with the unlawful agreements reached;

e. Agreeing to set output and/or capacity of Packaged Ice produced;

f. Fixing output of Packaged Ice consistent with the agreements reached;

g. Monitoring the actions of other conspirators to verify that they charged prices and otherwise refrained from competition as agreed between the conspirators; and

h. Fraudulently concealing the existence and activities of the Conspiracy.

66. As a proximate result of defendants' unlawful conduct, Plaintiff and the Class have sustained damage by paying supra-competitive prices that they would not have had to incur but for the unlawful conduct of defendants as alleged herein.

67. The conduct of defendants and their co-conspirators constitutes a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. §1 and is at a minimum an unreasonable and unlawful restraint of trade.

## COUNT II

### FOR RESTITUTION, DISGORGEMENT AND IMPOSITION OF A CONSTRUCTIVE TRUST FOR UNJUST ENRICHMENT BY DEFENDANTS

68. Plaintiff incorporates by reference the preceding and subsequent paragraphs as though fully set forth herein.

69. As a result of their unlawful conduct described above, defendants have been and will continue to be unjustly enriched. Defendants have been unjustly enriched, to the detriment of

1   Plaintiff and the Class by the receipt of, at a minimum, unlawfully inflated prices and illegal profits

2   for Packaged Ice. Defendants have benefited from their unlawful acts, and it would be inequitable

3   for Defendants to be permitted to retain any of their ill-gotten gains.

4         70.    Plaintiff and the Class are entitled to the amount of defendants' ill-gotten gains

5   resulting from defendants' unlawful, unjust and inequitable conduct. Plaintiff and the Class are

6   entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which

7   Plaintiff and the Class may make claims on a *pro rata* basis.

8   <div align="center">**JURY DEMAND**</div>

9         Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff

10  respectfully demands a trial by jury.

11  <div align="center">**PETITION FOR RELIEF**</div>

12        WHEREFORE, Plaintiff requests that:

13        A.    The Court determines that this action may be maintained as a class action under

14  Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be appointed class

15  representative and that Plaintiff's counsel be appointed as counsel for the Class;

16        B.    The unlawful combination and conspiracy alleged herein be adjudged and decreed

17  to be in unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

18        C.    Plaintiff and the Class recover compensatory damages as provided by law,

19  determined to have been sustained by each of them; and that joint and several judgments in favor

20  of Plaintiff and the Class, respectively, be entered against the defendants, and each of them, in an

21  amount to be trebled in accordance with antitrust laws plus the costs of the action, including

22  reasonable attorneys' fees, expert fees, and accountant fees, and pre- and post-judgment interest;

23        D.    Defendants, their affiliates, successors, transferees, assignees, and the officers,

24  directors, partners, agents and employees thereof, and all other persons acting or claiming to act

25  on their behalf, be permanently enjoined from continuing the unlawful contract, combination or

26  conspiracy alleged herein and from:

27              i.    Continuing, maintaining or renewing the contract, combination or

28  conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy

1  having a similar purpose or effect, and from adopting or following any practice, plan, program or

2  device having a similar purpose or effect; and

3          ii.     Communicating or causing to be communicated to any other person engaged

4  in the manufacture, distribution or sale of any product except to the extent necessary in connection

5  with a bona fide sales transaction between the parties to such communications;

6      E.    Plaintiff and the Class be granted such other, further and different relief as the

7  nature of the case may require or as the Court may deem just and proper.

8  DATED:  April 29, 2008

ROBBINS UMEDA & FINK, LLP
BRIAN J. ROBBINS
9  JEFFREY P. FINK
GEORGE C. AGUILAR
10  ASHLEY R. PALMER

12  _____
        JEFFREY P. FINK

14  610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone: (619) 525-3990
15  Facsimile:  (619) 525-3991

16  LANDSKRONER GRIECO MADDEN, LTD.
JACK LANDSKRONER
17  1360 West 9th Street, Suite 200
Cleveland, OH 44113
18  Telephone: (216) 522-9000
Facsimile:  (216) 522-9007

19  Attorneys for Plaintiff

28  336813_2.DOC

- 16 -

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 150276    — MB
* * C O P Y * *
April 29. 2008
11:55:19

**Civ Fil Non-Pris**
USAO #.: 08CV0775 CIVIL JUDGEMENT
Judge..: WILLIAM Q HAYES
Amount.:                    $350.00 CK
Check#.: BC8532


**Total—>   $350.00**


FROM: UNIVERSAL HILLCREST LLC
       VS REDDY ICE HOLDINGS, ET AL

JS 44 (Rev. 12/07)     **CIVIL COVER SHEET**     ORIGINAL

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Universal Hillcrest, LLC | Reddy Ice Holdings, Inc., Reddy Ice Corporation, Arctic Glacier Income Fund, Arctic Glacier Inc., et al. |

**(b)** County of Residence of First Listed Plaintiff   San Diego County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Jeffrey P. Fink, Robbins Umeda & Fink, LLP, 610 West Ash St., Suite 1800, San Diego, CA 92101, (619) 525-3990

Attorneys (If Known)   '08 CV 775 WQH BLM
unknown

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | **PERSONAL INJURY** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | ☐ 362 Personal Injury - Med. Malpractice | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 365 Personal Injury - Product Liability | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | **PERSONAL PROPERTY** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 370 Other Fraud | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 371 Truth in Lending | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 380 Other Personal Property Damage | | | |
| **CIVIL RIGHTS** | ☐ 385 Property Damage Product Liability | **IMMIGRATION** | | |
| ☐ 441 Voting | **PRISONER PETITIONS** | ☐ 462 Naturalization Application | | |
| ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☐ 463 Habeas Corpus - Alien Detainee | | |
| ☐ 443 Housing/Accommodations | **Habeas Corpus:** | ☐ 465 Other Immigration Actions | | |
| ☐ 444 Welfare | ☐ 530 General | | | |
| ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | | |
| ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | | | |
| ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC s. 1, 15 USC ss. 15 and 26
Brief description of cause:
class action for violation of Sherman Antitrust Act

**VII. REQUESTED IN COMPLAINT:**
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions)
JUDGE Janis L. Sammartino
DOCKET NUMBER 3:08cv00656-JLS-BLM

DATE 04/29/2008
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 150276   AMOUNT $350 —   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____
04/29/08